your cases and you have a line like now read out on your side of the lectern that tells you how much time you have left and I remind you that rebuttal is for rebuttal only. We call the first case U.S. v. Johnson and we'll hear first from Mr. Smythe. May it please the court my name is Peter Smythe I represent Johnny Johnson. The issue in this appeal is whether law enforcement illegally seized Mr. Johnson on the 13th of February 2014. Mr. Johnson on the morning of that date he exited his residence in full view of Eric Curtis who was surveilling the house. Mr. Johnson had nothing in his hands. Mr. Johnson went over to a jeep parked in his driveway looked into the jeep and then went over to a pickup truck and hopped in the pickup truck which was carrying two other people and the pickup truck then left the residence and took off. Now they had the house under surveillance and they had seen they had an informant who had told police officers that they purchased made two purchases of methamphetamine out of that house. Yes yes your honor. And this was your client's house? Yes your honor. Yes the law enforcement said that they did a control by two days February 11th two days before the seizure and then in the two-week period beforehand. Agent Curtis while he was following the truck radioed to Jeff Tyndall a patrol officer and asked him to locate the truck and find probable cause for traffic stop. What's important in this case is agent Curtis didn't say anything about reasonable suspicion. He said stop to try to find probable cause for traffic stop and agent officer Tyndall's testimony all through trial was that he commenced a traffic stop and that's all that he did. He didn't do anything else. Was there a violation? Did he testify that there had been traffic violations? Yes and we don't contest that. The testimony is that actually agent Curtis observed the traffic violations and he radioed those violations to officer Tyndall who then made the stop based upon that communication. But the one was turning without giving a signal right? Yes. What was the other? Speeding. So they had grounds to stop the vehicle? Yes they did and they had grounds to do an investigatory traffic stop. Where the contention is is once that stop was over they took out a canine to sniff around the car and under Rodriguez they can't do that because the mission of the stop was limited to a traffic violation and that was all. Now the government in its brief. What evidence do you look to to determine that the stop was over? It was officer Tyndall said that he had completed the search warrants information and that completed the stop. But he found that all three of the passengers had outstanding warrants didn't he? No they had criminal histories. Criminal histories. Yes. And they had a search warrant. I mean the argument is that if they had reasonable suspicion to investigate for narcotics based on the fact that they had this informant and the information pertaining to the man's house. Yes that's what the government contends. We contend that that is a historical fact and actually that would be aligned with criminal history. The government has defined along with this court's precedent that reasonable suspicion is based upon criminal activity that is occurring or about to occur. That's present tense. It's not past tense. Also that criminal activity may be afoot. The driver was so nervous and emotionally disturbed they had to handcuff him. Well actually when we look through the record Judge Davis the testimony was at trial was he was getting agitated and that's on page 399 of the record and there are no facts supporting that. It's just a conclusion that he was agitated. There's no testimony that his hands were shaking, that his arteries was pulsating or anything like that. It's just that he was getting agitated and that could be for a variety of reasons. Well it was sufficient that they thought it necessary to handcuff him wasn't it? Well the agent Curtis told Officer Tindall to have everybody exit from the truck so nobody could call in pertaining to the house search. It is, after reading the record, it's unclear to me exactly when everybody was handcuffed. I know they were handcuffed when they were arrested. You said it's unclear to you. I'm sorry? You said it's unclear to you. No I'm just asking whether that's what you just said. It was unclear to you. Exactly when they got arrested, when they were handcuffed. Wasn't it also unclear to the officer? Wasn't his testimony that he didn't remember when he got handcuffed? I believe so. And didn't he say further he didn't even remember who handcuffed him? I believe so your honor. So there were two officers? Yes sir, at the scene. And two people in the vehicle? Three. Three? Two, I'm sorry, two got arrested? Yes. Two officers, two arrested and he couldn't remember who handcuffed a defendant and who, I guess, who arrested him. And he was one of the arresters if that's a word. Yes your honor, yeah, I believe that's true, yes. It was unclear to everybody. Yes your honor, but they they were handcuffed eventually and arrested and then taken back to Mr. Johnson's residence, the the driver and Mr. Johnson. Which is to say he doesn't know whether the arrest occurred based on the search or whether the arrest, the handcuffing occurred based on the arrest, whether the handcuffing occurred because he was agitated. He doesn't even remember when he got handcuffed. Isn't that what he said? Yes, it seems unclear to me from reading the record. Yes your honor. All right, let me ask you this. What's your best case for the fact that the officer can't consider recent drug transactions in an occupant's history in order to continue the search? I believe actually Rodriguez, your honor, because one thing that the government argues in the brief is extending detention, where Rodriguez, the Supreme Court case asks the question, what is the mission of the stop? The mission of the stop here was a traffic violation. So and that's clear throughout the record with Officer Tindall, you know. But you're missing a logical step there because Rodriguez doesn't prevent officers from doing investigation of something apart from the direct mission of the stop, right? Right. I mean can, Rodriguez doesn't imply that they have to develop the suspicion during the traffic stop in order for there to be further investigation, right? I disagree with that because Judge, Justice Ginsburg says, she talks about the seizure's mission and the mission here that was only communicated to Officer Tindall was traffic violation. There was no discussion at all about reasonable suspicion. Now we get back to the controlled by. Like I said, that's a historical fact that's in the past. That was two days before. The government cites the Zamora case. In Zamora, there was a tip the drugs were in the house that morning. That's present tense. Well suppose he had brought, it took six or eight minutes to do the the background check, right? On all three of them. Suppose he had, suppose they had just brought the canine up there at the very same time. I don't think they can do that under Rodriguez because that, Rodriguez says that a dog sniff is no ordinary incident of a traffic stop. Well they could have used inevitable discovery at that point. I don't believe so because there was, there wasn't anything, there was no indication that there were any narcotics in this truck. In fact, it wasn't even Mr. Johnson's truck. It was, it was an unidentified driver until he was stopped and identified because of the stop. So, so that's a break in the chain also because on all the cases that the government cites, the defendant is getting into his own vehicle and here Mr. Johnson is getting into somebody else's vehicle. So, so you, so you have a patrol officer who commences a traffic stop based upon a traffic violation and under Rodriguez, unless something comes about during the investigation, the seizure's a traffic stop and nothing more. Now if some facts had arisen during that time, Judge Jones, then I agree that the mission therefore would change. You'd have a traffic stop and then you'd have reasonable suspicion giving law enforcement. Well let me ask you a question though. They could have stopped him on the street. Suppose he had emerged from his house carrying a backpack and started walking away. They could have stopped him right there and done a Terry search, don't you think? I think that's questionable whether they could have done that or not because the Ardoin case that the government cites in the brief, that, that seems to be the scenario in Ardoin, but the court there said that we're not reaching the question of a Fourth Amendment seizure. The, the government does contend in its brief on page 17 that because of these two controlled buys, it could conduct a Terry stop. It could, as he was walking on the street, anywhere on any street, virtually at any time, it could conduct a traffic stop while he was in a car. And so what the government contends is two buys in the past, historical events, are sufficient for reasonable suspicion and I don't believe that's supported in this court's case law and I don't think that's supported by Rodriguez either. Well they're not only buys but they're buys at his house. Yes, buys from the house and in this case he didn't have anything in his hands and the stop occurred well beyond his house. So as Agent Curtis saw Mr. Johnson leave the residence, there's nothing that he could communicate to Officer Tindall to say, well, we have some suspicious facts of ongoing criminal activity. In fact, the communication from Curtis to Tindall was find probable cause for a traffic stop and that defined the stops or the seizures mission under Rodriguez. And then let me also just point out that in this court's prior case law, one thing about the criminal history is this court has said that criminal history isn't sufficient to support arguments, hang on, two control buys that occurred in the recent past but they occurred in the past and they're not sufficient to support reasonable suspicion for an extended seizure or to change the mission in the middle of this traffic stop. Is it something they could consider, say, in addition to nervousness of the driver if that's supported by the record? Yes, Your Honor. If it occurred during the traffic stop, yes. But I mean, could they also, if you've got nervousness of the driver, could that also allow them to consider what they know about the recent history of the passenger? Well, I don't believe that the recent history because this court has said that criminal history is not sufficient to support reasonable suspicion. Now, the question before the court would be if you have a control buy that occurred two days before or a week before, doesn't that Well, I think that's a stretch of terminology. That is not history as most of us think of it. Correct, Your Honor. But criminal history is usually founded upon a conviction based upon evidence beyond a reasonable doubt. And here we're talking about two control buys that are based upon probable cause, which is a lesser standard. But going back to just the No, no. Two control buys meant there were two illegal transactions. Well, it's based upon probable cause. Well, whatever it's based upon, there were two illegal transactions in the immediate past. And it's very astute of you to call them criminal history, but it basically indicates what the fellow's business is. He hadn't had much time for rehabilitation. And evidence of a past crime may be the basis for an arrest, but their argument is it was basis for reasonable suspicion, which was formed subsequent to a stop, a traffic stop. Isn't that their argument? I believe so, Your Honor. And just they bring out in their 28-J letter, the Davis case. Because in Clark, which is one of the cases they cited in the 28-J, that's Clark. Well, a couple of differences in Clark. One is we're talking about in Clark, the defendant's house, they had a warrant for his house and his vehicle. Isn't that right? I believe so, yes. And so that's one difference. And then the other difference is they didn't develop a basis for a stop in Clark. What they did in Clark is they just went and arrested him based on what they already had. They didn't say, let's find probable cause to conduct a stop. They said, we're going to make an arrest. Isn't that what happened in Clark? Yes, Your Honor. In fact, footnote three in Clark says that the government expressly abandoned the argument that it appears to be making here. And it says that the facts are similar. For these reasons, we contend that Mr. Johnson's conviction should be vacated and the case remanded back to the trial court. Okay. Thank you, Mr. Smiley. Mr. Fennell. Thank you, Your Honor. May it please the court, my name is Tim Fennell. I represent the government in this case. There are two established paths to affirm the judgment in this case. The first is that Mr. Johnson fails to show the necessary expectation of privacy in either the car or the items that were searched and seized from that car. The second is that the police had reasonable suspicion of Mr. Johnson's illegal activity that allowed them both to stop the car and prolong the stop to conduct a free air drug dog search. This court should affirm on both grounds. It need only find one of those grounds, but either way, affirmance is still the result. One argument that I don't believe has been touched on today in the argument, but I do want to emphasize it here, it has primary placement in our brief, is the lack of a reasonable expectation of privacy. This goes all the way back to the Supreme Court's decision in Ruckus, which we cite in the brief. The companion case that I would most rely on from this circuit would be Powell. We also cite the Pack case. I think it's important to highlight that in this particular case when Mr. Johnson brought his motion to suppress, the government filed a response and in that response we argued a lack of standing, a lack of a reasonable expectation of privacy. Mr. Johnson did not, in response to our objection to the lack of standing, he did not assert standing. As a matter of fact, he was careful not to do so. He said in his motion that for the purposes of his motion only, he simply alleges that I have standing. He stated a conclusion without any supporting facts. As the district court issued its decision, again, he did not object and assert any sort of standing. By the time that Mr. Johnson got to sentencing in this case, he was pro se and at the time of his sentencing, he actually indicated in his own handwriting that he was never found to be in possession of anything in that car. So once again, he disavowed any sort of reasonable expectation of privacy. Even here on appeal, he does not assert any expectation of privacy in the vehicle. He relies solely on the stop itself and what he attempts to do is extrapolate from Ruckus, Brenlin, and Rodriguez exactly what this is. That's not what Brenlin stands for. There is no such thing as automatic standing. You have to assert a legitimate expectation of privacy that has both a subjective and an objective component. Thus far, Mr. Johnson has not done that. He has relied solely on what he calls the illegality of the stop. He did talk today extensively about the mission of the stop. However, the mission of the stop is not cabined to the stated purposes that were communicated between the officers. This court is not bound by those stated purposes. Are you saying he's relying on the illegality of the stop? Yes, Your Honor. He is relying solely... The part he doesn't contest that there were traffic violations. That part he does not contest. That's correct, Your Honor. But what he says is that his stop became illegal because it was prolonged and that it was prolonged beyond the mission of the stop. He wants to restrict this court's analysis to what was communicated between the officers, find probable cause to take him down for a traffic violation, and certainly that occurred. However, that is not what restricts this court's analysis. The evidence is construed most in the record, and here the district court expressly found that there was reasonable suspicion, and he looked back at the evidence developed in the search warrant. The evidence developed in the search warrant, and I'd like to highlight this, it's not simply that there were buys out of Mr. Johnson's house. The evidence included buys directly from Mr. Johnson. The officers, in other words, not only knew that it was coming out of the house, they knew who was dealing in the house, specifically Mr. Johnson. The informant made a buy from Mr. Johnson within two weeks prior to the issuance of the warrant, and then within 72 hours he made another buy. He identified Mr. Johnson by a mugshot. When the officer conducting the surveillance was sitting outside the house, he actually observed Mr. Johnson, recognized him. He had already, as detailed in the record, he had already developed evidence that Mr. Johnson had prior drug convictions, was on parole, having served prison time, and was now on parole for a drug conviction. All of those things are not to be brushed aside or to be separated in what I believe it was the Powell Court indicated was a divide and conquer analysis, where you look at individual facts in isolation. That's not how this court is to look at things. You look at the Ardoin case, the Zamora case, the Clark case. All of those certainly indicate that what we had here in terms of reasonable suspicion, and I would also assert probable cause, justified all of the actions that the officers took that day from the stop. Was Johnson charged with this offense instead of Berg? Mr. Berg was charged with felon in possession of a firearm, Your Honor. As far as specific rationale behind the charging decision, I'm simply going... Well, it is unclear, is it not, to whom this backpack belonged? Mr. Berg was questioned after the arrest. Mr. Berg said that he owned the backpack, but he disavowed any ownership of any drugs in Dakar at all, including the backpack. Miss Kidd was also interviewed, the third occupant. She indicated that the backpack belonged to Mr. Berg. But Johnson was charged with a possession with intent offense. That's right. That's right. It's important to note that drugs were found in more than just one location here. They were found in the backpack in the eyeglass case. The eyeglass case was not actually inside the backpack. It was on top of the backpack. Right. That's right. The lockbox that was behind the seat was something that Mr. Berg would later specifically reference. So I don't know if I answered your question about why Mr. Berg wasn't charged, but we believed we had sufficient evidence that Mr. Berg was a felon in possession of a firearm based upon the location of the firearm relative to where he was sitting in the car. We did not believe that we had sufficient evidence on the drugs for Mr. Berg, or there was some other factor. I don't know. I wasn't part of that charging decision. It wasn't much easier to prove. The firearm case was an easy case. That is what we thought, Your Honor. What do you say to counsel's argument that what we're looking at is what the officer found out after the stop that was related to the reason he stopped? In order to, we've got to look at that knowledge in order to determine whether this stop matured into reasonable suspicion. Certainly that is fair game for this court to consider. However, I completely disagree that case law restricts this court's analysis. What's your best case contrary to that? Well, all of the cases that talk about the totality of the circumstances, because that is certainly discussed in the Powell case, in the Pack case, Ardoin, Zamora, Clark, and when you're talking about the totality of the circumstances, by definition, that's what it is. It's not simply what comes after. It is also what comes before. And again, it is not... Did any of those cases involve facts that happened before? Yes, they did, Your Honor. They involved both, there's a myriad of facts. Some involved tips from informants. Some involved search warrants. Some involved were simple traffic stops that then developed into additional evidence. So those cases don't have a set of facts that is exactly on point with what we have here. But collectively, what they stand for is that just like the district court did here correctly, this court can and should look at what happened before, what happened during, and then decide, based upon the entire record, whether there's a totality of circumstances that shows reasonable suspicion, probable cause. As you indicated, Judge Graves, the officers in the Clark case, they didn't have a traffic violation. Based upon one control by, not two like we have here, but based on one control by, and evidence and information from a CI, they were sitting outside Mr. Clark's house, similar to what was happening here. They then saw Mr. Clark drive away just moments before they were going to execute the search warrant without a traffic violation, without an arrest warrant. They arrested him on probable cause. We got some significant differences. One of which, to me, is at least, they had search warrants both for the house and the vehicle. Not like in this case. Right? Well, they had, in this case, we applied for and received search warrants for the house and for vehicles. Not the particular vehicle that was driven by Mr. Johnson, because that vehicle was not associated with Mr. Johnson, driven by Mr. Berg, because that was not associated with Mr. Johnson's residence. However, that distinction... Not for that vehicle. But as in the Clark case, that was a distinction that does not make a difference here, because the probable cause, and the Clark court talks about this, they talk about the fact that driving away from the scene, unlike the Bailey line of cases, where you're trying to get into a vehicle that drives away from the scene of a search warrant without sufficient connection to the facts in the search warrant, the search warrant by itself, as in Bailey, isn't enough to stop that vehicle away from the scene. You have to look at the underlying facts. And here, our underlying facts, again, are not simply that this was, that there was drug activity at a residence without knowing who was doing the drug activity. We actually have two control buys from Mr. Johnson to our informant, and then Mr. Johnson being seen by the officer leaving. But the undercover officer who made the phone call called up the K-9 officer and said, find probable cause to make a stop. And you seem to be arguing that he had the basis for an arrest when he was sitting in front of the house looking at it. Yes, I do. I believe that we do have basis for that. And I look at the language in the Clark case specifically to support that conclusion. But that's not what we did here. They took a more cautious approach. They justified the stop based upon traffic violations. But again, even if they had not had traffic violations. They could have pulled him over and arrested him, couldn't they? Yes, yes, Your Honor, they could have. Based on the prior drug deals? Yes, that's our position, and that's consistent with Clark. I'm sorry, Your Honor? Do you have an arrest warrant? We do not, but they didn't in Clark either. And they did a full-fledged probable cause arrest in Clark, and they talk about the difference in the timing. And they specifically say in Clark, and they cite the Watson case from the Supreme Court, where there was a six-day delay between the development of the probable cause. There was no arrest warrant in that Supreme Court case in Watson. And this court reversed a district court's conclusion that there was some contemporaneity requirement between what had happened at the location where the probable cause was developed at the house and where the stop occurred. This court in Clark said no, that is not supported by our precedent. So again, I go back to our two primary arguments are the lack of an expectation of privacy, the second is that we had ample reasonable suspicion, and I would argue, again, consistent with Clark, that we had a full-fledged probable cause. There is certainly evidence in this record for this court to affirm, to find the evidence in the light most favorable to the government, and we would ask the court to affirm on both of those grounds. Thank you. Let me ask you this. How could the district court properly, and how can we consider what was in the application for the warrant, which presumably was not in the officer's knowledge? Well, it actually was in the officer's knowledge, Your Honor. There was a team that was going to be executing the search warrant. So the officer who actually made the stop knew about the warrant and the application? There were two officers, Officers Curtis and Tyndall. Officer Tyndall was the canine officer, and he was actually assigned to help execute the search warrant that morning. So he was not simply a random canine officer that was available. He was part of the search warrant team. Officer Curtis, who was doing the surveillance, saw the gentleman leave the house, knew that Officer Tyndall was specifically asked, you have a patrol car, you have a canine, you're coming to do the search warrant with us, pull that vehicle over, and that's what happened. And then we have Officer Rodriguez, who was the affiant on the search warrant. So under the collective knowledge doctrine, who was also at the scene of the search warrant when they brought the gentleman back there after they arrested them. So under the collective knowledge doctrine, we certainly have sufficient amount of evidence and communication between these officers. But you have to resort to the collective knowledge doctrine because there isn't any evidence. Is there that the officer who actually made the stop was aware of what was included in that search warrant? It was the surveillance officer who called and said, I need you to make the stop. Isn't that what happened? That is correct, Your Honor, but I would disagree that we're having to resort to the collective knowledge doctrine. That's a recognized doctrine, and it's perfectly permissible, and actually it has great practical application. It's recognized, but it gets raised when the evidence doesn't indicate that the officer actually knew it himself. Well, otherwise what this court's precedent would require, and it does not, is that officers have some sort of a collective briefing before any of them take action relative to a suspect. And that's clearly not what's required under this court's precedent or under the Supreme Court's precedent. The canine officer was there before the officer who made the stop made his investigation to check out the vehicle? The canine officer made the traffic stop. He made the traffic stop. Yes. Officer Curtis, who was not the canine officer, but he was the one surveilling the house, he's the one that did the initial following of Mr. Johnson's vehicle. He saw the speeding violation. He saw the failure to signal violation. And at some point, Deputy Tindall, the canine officer, overtakes him for practical reasons because he had a squad car. And so he was the one who was instructed, here's what I saw. Pull the vehicle over. So he was the first one to actually pull the vehicle over, make contact with the occupants of the vehicle, etc. Officer Curtis, the surveillance officer, pulled up shortly thereafter. They were pretty much together then. Within moments or a few minutes. Yes, Your Honor. Okay. Thank you very much, sir. Thank you. Back to you, sir. I'd like to make two points on rebuttal. One is, one is the Rodriguez case. Because the Rodriguez case, the Supreme Court talks about the seizure's mission. And what the government argues is, in effect, that officers can enact a traffic stop. But then that traffic stop can be judicially reengineered into reasonable suspicion after the fact. And Rodriguez, I think, prohibits that. The government cites all these pre-Rodriguez cases about totality of the circumstances. But Rodriguez says, asks the question, what is the Iberra case, says that there must be some degree of communication between officers for collective knowledge to apply. It's not just osmosis. And here, the record shows that the only communication between Officer Curtis and Tyndall pertained to a traffic stop that morning. And that's all that the communication was. In fact, Officer Tyndall says, I was called by Curtis to locate defendant for a traffic stop, and I made a traffic stop. And that's all that Curtis said about probable cause. Let me ask you a question, though. I thought we were just told that the fellow who had the canine was the person who had observed the controlled buys. Is that wrong? I believe it was said that he was part of the team to go do the search warrant at the residence. Okay. And the search warrant was based on controlled buys. Yes, controlled buys. From this defendant. So, I don't understand why the police, to me, this whole business about the mission is superfluous or an abundance of caution because they had probable cause to arrest this fellow based on controlled buys that have been observed. Well, they didn't arrest him. But they did have probable cause. They had probable cause. I don't think the standard for probable cause for arrest differs from the standard for search, except who the object of the seizure or search is. And they had probable cause for both. Well, comparing the Davis case, the law enforcement went and arrested him and then did a search pursuant to a lawful arrest. Here you have the search occurring before the It's based upon the fact that he was personally witnessed to engage to sufficient evidentiary standard for probable cause in drug deals. Well, that's where we disagree, Your Honor, because there are no articulable facts that morning that there was ongoing criminal activity. Well, you don't have to arrest somebody at the very moment that the crime is They didn't go to arrest Mr. Johnson. But they could have. That's my point. They could have, but they did not. And since they did not, we have to look at what they did and how they did it. And because they were a little more careful, because they were even more circumspect, the evidence must be suppressed. Well, see, I disagree. I disagree with that, that they were more cautious. They were looking for probable cause for a traffic stop. And then once they affected the traffic stop, then they did a dog sniff, which Rodriguez says, well, that's a that's a whole different mission than a traffic stop. Well, I understand what you're saying. But just for the sake of argument, Rodriguez is talking about the potential interference with the rights of innocent people who get stopped for traffic violations and then something happens or the stop is unconstitutionally prolonged or whatever. But this is not that case because you've got a fellow whom they have every right to arrest at the time that they conduct the stop. But again, they did not arrest him until after they conducted the search and the search was pursuant to an illegal seizure. Officers have to know more for probable cause than they do for reasonable suspicion, though. I mean, I think that's your point. And if instead of saying, look for a traffic violation and stop that car, if they'd said, look, go stop that car and arrest Johnson, what if they could have done that? They can't. They don't have enough knowledge to rise to reasonable suspicion. Well, well, I think I think the question comes down to if the call or the mission was to go arrest Johnson, then they arrest him and if they do a search, whether that's a lawful search pursuant to arrest. But here they do a traffic, the mission was a traffic stop, and then they go over and beyond that based upon what? Based upon past history, not based upon facts of ongoing criminal activity. And so that's an illegal seizure there. If they had gone to arrest him, we don't know whether or what would have happened because it didn't happen. You know, it's just hypothetical. And I think that's one reason why the government abandoned the traffic stop arguments in Clark and said, well, it was an arrest and the search was pursuant to a lawful arrest. But here, as Officer Curtis says, we did the search and then we found what we were looking for and then we arrested, which is reversed. OK, thank you very much. Thank you, Your Honor.